IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL GLOVER,

       Plaintiff,

   v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

No. CV 06-697-MO

OPINION & ORDER

**MOSMAN, J.,**

Plaintiff Michael Glover seeks review of the Commissioner's final decision denying his

applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income

("SSI").  He argues the Administrative Law Judge ("ALJ") wrongly rejected examining physician

Dr. Dover's opinion concerning the extent and duration of his limitations.  He also argues the

ALJ erred in finding him not fully credible.  For the following reasons, the Commissioner's

decision is REVERSED AND REMANDED FOR FURTHER PROCEEDINGS under sentence

four of 42 U.S.C. § 405(g).

PAGE 1 - OPINION & ORDER

## BACKGROUND

Mr. Glover was 58 years old in September 2005 when the ALJ issued her decision. He alleges disability as of December 17, 1994, due to "arthritis, respiratory, vision and speech impairments." Tr.[1] at 80. For purposes of DIB, his date last insured was December 31, 1999. Mr. Glover has a Master's degree in Business Administration. He has previously worked as an educational director at a Hopi Indian School and a warehouse worker.

The medical evidence in this case is sparse due to Mr. Glover's inability to pay for treatment. *See* Tr. at 296, 370, 373. In relevant part, it shows the following. In 1985, Mr. Glover suffered a gunshot wound to the face, which resulted in several surgeries. He continues to have a tracheostomy due to this injury. Tr. at 327. In 1994, he sought treatment at Northern Arizona Orthopaedics complaining he had been experiencing hip pain for five years. Tr. at 296. The physical examination was unremarkable, but an MRI showed "minimal degenerative changes." Tr. at 297. In December 2000, Mr. Glover went to the emergency room to get a replacement tracheostomy tube. Tr. at 193. Hospital records show he was also treated in 2001 for pneumonia, chest pains, and hypotension. Tr. at 156-57. Dr. Apau treated Mr. Glover for osteoarthritis in his hands from 2001-2002. Tr. at 232-36.

In February 2003, in connection with his disability applications, Mr. Glover was examined by Dr. Thomas. Dr. Thomas diagnosed "[o]steoarthritis of the right hand," "[s]uspect degenerative arthritic changes of the lumbar spine," and "[d]epression, presently controlled." Tr. at 196-97. He further concluded:

> From an orthopedic viewpoint, [Mr. Glover] can walk, stand or sit for an hour at a time. He cannot do heavy lifting. He has difficulty handling small objects with his right hand. He can type or use a computer for only a short time and then his hand becomes painful. He has no limitation in talking or hearing.

Tr. at 197.

---

[1]"Tr" refers to the "Transcript of Social Security Administrative Record" filed in this case.

In October 2004, Mr. Glover had an additional facial surgery to remove hardware retained in his left maxilla and an abscessed tooth. Tr. at 270-71. He also had an MRI done of his jaw a few month later in December. The MRI report states his "[r]ighjt [sic] TMJ demonstrates chronic degeneration" and his left TMJ shows a "marked decrease in the translation in the open mouth projections." Tr. at 284.

Finally, in June 2005, x-rays were taken of Mr. Glover's spine, pelvis, and hands. Tr. at 322-25. In particular, the x-ray of his right hand showed "severe degenerative joint disease." Tr. at 324. Dr. Dover examined Mr. Glover in June and July 2005 and reviewed his medical history, including the 2005 x-rays. He concluded Mr. Glover "has significant disease in his hands, jaw and hips" and that these problems precede Mr. Glover's date last insured in 1999. Tr. at 328. Dr. Dover stated that based on the 2005 x-rays, Mr. Glover "has had significant disease for about a decade." *Id.* He further concluded Mr. Glover has "marked manipulative limitations because of his bilateral hand arthritis" and that he "can only do activities for about an hour before he experiences significant pain," preventing him from "sitting, standing, walking, pushing or pulling for extended periods of time." Tr. at 328-29.

The initial hearing before the ALJ was held on January 27, 2005. Mr. Glover was represented by counsel, and at that time he requested that a medical expert ("ME") be contacted to review the minimal medical record and infer disability onset. Tr. at 352-53. The ALJ continued the proceedings until June 7, 2005. At the second hearing on that date, Mr. Glover testified, as well as Dr. Rullman, acting as an ME, and Vocational Expert ("VE") Paul Morrison. The record was held open after the second hearing to allow Mr. Glover to submit additional medical evidence. The June 2005 x-rays and Dr. Dover's report were submitted after the hearing. The ALJ issued her decision finding Mr. Glover not disabled in September 2005. The Appeals Counsel denied review. This appeal followed.

## LEGAL STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Roberts v.*

PAGE 3 - OPINION & ORDER

*Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996).  To meet this burden, a claimant must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The Commissioner engages in a sequential process encompassing between one and five steps to determine disability under the Social Security Act.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(a), 416.920(a).  Only steps four and five are disputed here.  At step four, the ALJ determines whether the claimant retains the residual functional capacity ("RFC") to perform "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(iv), (f), 416.920(a)(4)(iv), (f).  The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite his limitations.  20 C.F.R. §§ 404.1520(e), 416.920(e), Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (1996).  In making this assessment, the ALJ must consider the medical evidence, as well as other relevant evidence.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can perform past relevant work, he is not disabled.

Here, the ALJ assessed Mr. Glover's RFC as follows:

> [He can] sit one hour at one time for eight hours of an eight-hour workday.  He can stand one hour at one time for eight hours of an eight-hour workday.  He can walk one mile at one time.  He can lift up to 10 pounds frequently and up to 20 pounds occasionally.  He must avoid environments with excessive dust.

Tr. at 21.  The VE testified that a person with this RFC and Mr. Glover's background could perform Mr. Glover's past work as an educational director.  Thus, the ALJ found Mr. Glover not disabled at step four.  Tr. at 23.

The ALJ also considered step five of the disability analysis.  At step five, the ALJ determines whether the claimant has the RFC to do any other work that exists in the national

economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). Here, the burden is on the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform. *Yuckert*, 482 U.S. at 141-42; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). This burden may be satisfied through VE testimony or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). Here, based on the VE's testimony, the ALJ found Mr. Glover has the RFC to work as a teacher aide, companion, and food assembly worker, which jobs exist in substantial number in the economy. Tr. at 23.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

## DISCUSSION

Mr. Glover argues the ALJ's RFC assessment is incomplete because it does not include all of his limitations identified by examining physician Dr. Dover and his own testimony. As a result, he contends the ALJ's step four and five conclusions finding him not disabled are in error.

A.)    Dr. Dover's Testimony

Dr. Dover is an examining physician under the regulations. 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). Where

the opinion is contradicted, however, the ALJ need only have "specific and legitimate reasons
that are supported by substantial evidence in the record." *Id.* at 830-31.

   The ALJ gave "little weight" to Dr. Dover's opinion.  Tr. at 22.  As a general matter, she
found he based his opinion on Mr. Glover's subjective statements rather than objective medical
evidence.  Tr. at 22.  This is not supported by the record.  It is clear from his report that
Dr. Dover based his conclusion in large part on the MRIs performed in 1994 and 2004 as well as
the June 2005 x-rays.  *See* Tr. at 327-29.  For example, his conclusion that Mr. Glover has
"severe right hand osteoarthritis and modest osteophytosis; the left hand has moderately severe
osteoarthritis" is based on the radiology reports from 2004 and 2005.  Tr. at 328.  Dr. Dover also
explained that his opinion concerning the duration of Mr. Glover's impairments is based on
objective evidence and not just Mr. Glover's allegations.  *See id.* ("With the amount of disease
Mr. Glover presently shows on his x-rays, he has had significant disease for about a decade.").
Thus, I find this reason for rejecting Dr. Dover's opinion is not supported by substantial evidence.

   Aside from her general criticism, the ALJ also disagreed with the specifics of Dr. Dover's
opinion.  First, she rejected his conclusion that Mr. Glover "can only do activities *for about an
hour* before he experiences significant pain" and therefore he is limited from "sitting, standing,
walking . . . for extended periods of time," Tr. at 329 (emphasis added), finding it is inconsistent
with other evidence in the record, including Mr. Glover's testimony concerning his physical
abilities.  Tr. at 22.  This is puzzling because Dr. Dover's opinion is substantially similar to the
ALJ's ultimate RFC assessment.  As quoted above, she concluded Mr. Glover can only stand or
sit for "one hour at one time" and can only "walk one mile at one time."  Tr. at 21.  Mr. Glover
similarly testified that he needs the option of changing positions because he cannot stand or sit
continuously for more than 45 minutes to an hour.  Tr. at 377-78.  The inconsistency suggested
by the ALJ between this assessment and Dr. Dover's opinion is unclear.  *See* Tr. at 22.  Without
some further explanation, I find there is no inconsistency sufficient to justify rejecting
Dr. Dover's opinion.

PAGE 6 - OPINION & ORDER

Next, the ALJ stated Dr. Dover's opinion that Mr. Glover is limited from talking for more than an hour at a time due to his jaw injury "is consistent with TMJ physical examination which revealed bilateral crepitus and tenderness and moderate sublaxation on the right." Tr. at 22. But she did not include this limitation in her RFC assessment. Because this limitation is supported by the uncontradicted medical record, there is no legitimate basis for rejecting Dr. Dover's opinion.

Finally, the ALJ rejected Dr. Dover's conclusion that Mr. Glover has "'marked manipulative limitations' because of bilateral hand arthritis" in favor of Dr. Rullman's testimony that the "limitation in the use of [Mr. Glover's] hands is not supported by the evidence of record." Tr. at 22. The ALJ further explained that Dr. Dover's opinion is not compelling because the June 2005 x-rays do not indicate "erosive arthritic disease," and Dr. Dover's physical examination did not reveal "the deformity which Dr. Rullman testified could be expected to be present with osteoarthritis of the duration reported by [Mr. Glover]." Tr. at 22. On the first point, Mr. Glover does not allege disability due to *erosive arthritis*; rather, his claim is based on osteoarthritis, Pl.'s Op. Br. at 8-9, n.6., which is identified in the 2005 x-rays. Tr. at 331-32. Regarding Dr. Rullman, he did testify that deformity is commonly associated with osteoarthritis of the duration alleged by Mr. Glover and that there is no indication of deformity in the record. Tr. at 388-89. Specifically, he noted that Dr. Thomas, who examined Mr. Glover in 2003, failed to indicate any deformity. Tr. at 387-88. However, Dr. Rullman also described the sparse medical record available in this case and stated, "I certainly acknowledge that [Mr. Glover] has discomfort in his hands. We have no description beyond what I've cited, no x-ray, and since [he] seems to be using his hands, and indeed he's writing at the present time, *I find it difficult to know the level of impairment*." Tr. at 382 (emphasis added).

Based on this own words, Dr. Rullman was unable to form a specific opinion concerning the extent of Mr. Glover's impairments. It is also important to note that while Dr. Dover considered the 2005 x-rays, Dr. Rullman did not as they were taken after the hearing in which he

testified and the ALJ did not re-contact him and ask him to comment on this additional evidence. Thus, it is unclear whether there is an actual conflict between Dr. Rullman and Dr. Dover because their opinions are not based on the same record.

The ALJ stated it was unnecessary to re-contact Dr. Rullman because Dr. Dover's physical examination did not reveal deformity. Tr. at 22. Indeed, Dr. Dover reported an "unremarkable" physical examination with only "mild signs of arthritis at base of thumbs bilaterally." Tr. at 328. However, under the circumstances presented here, I find it was error for the ALJ to base her finding of non-disability on a non-examining physician who did not have the benefit of reviewing all of the available medical evidence, particularly when he specifically noted the difficulty in formulating an opinion due to the sparse medical record. The general presumption is that an examining physician is given more weight than a non-examining physician. *Lester*, 81 F.3d at 830. And even though this presumption can be overcome, it must be based on specific and legitimate reasons. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The ALJ's reasoning does not meet this standard. Relatedly, under these circumstances, I also find the ALJ failed to fully and fairly develop the record, as is her duty, by relying on Dr. Rullman without having him consider the post-hearing evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006).

B.)    Mr. Glover's Testimony

Mr. Glover also argues the ALJ erred in finding him only "partially credible." Tr. at 19. "Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). The ALJ may use the "'ordinary techniques of credibility evaluation,' such as considering the claimant's reputation for truthfulness and any inconsistent statements in h[is] testimony." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (quoting *Fair*, 885 F.2d at 604 n.5). The claimant's subjective statements regarding limitations and the severity of symptoms can only be rejected for "clear and convincing reasons." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

PAGE 8 - OPINION & ORDER

The first reason the ALJ gave for giving less weight to Mr. Glover's testimony is that his alleged limitations are not "fully support[ed]" by the medical record. Tr. at 19. In particular, the ALJ found Dr. Rullman's testimony does not support Mr. Glover's allegations. As a general matter, "the ALJ may not reject the claimant's statements regarding h[is] limitations merely because they are not supported by objective evidence." *Tonapetyan*, 242 F.3d at 1147. Additionally, as previously discussed, the ALJ erred in her reliance on Dr. Rullman's testimony in light of the current state of the record. Thus, to the extent Mr. Glover was found non-credible based on Dr. Rullman's opinion, this was also error.

The ALJ also found Mr. Glover's allegations are undermined by his lack of medical treatment. Tr. at 20. Lack of medical treatment is generally relevant in assessing credibility. *Smolen*, 80 F.3d at 1284. But, it is not properly considered where such failure is due to financial difficulty. *Gamble v. Chater,* 68 F.3d 319, 321 (9th Cir. 1995). Mr. Glover admittedly sought minimal treatment over the years for his various conditions, but, as he explained, this was because he lacked medical insurance and the ability to otherwise pay for such treatment. Tr. at 370, 373. Thus, I also find the ALJ erred in her treatment of this evidence.

## REMAND

In light of the ALJ's errors, Mr. Glover argues I should credit as true the wrongly rejected evidence and remand the case for an immediate award of benefits. Whether to remand for further proceedings or for immediate payment of benefits is within the court's discretion. *Ramirez v. Shalala*, 8 F.3d 1449, 1455 (9th Cir. 1993). Generally, courts award benefits "when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and there is not sufficient evidence to support the ALJ's conclusion." *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) (citation omitted). On the other hand, a remand for further proceedings "is appropriate where additional administrative proceedings could remedy defects" in the ALJ's decision, *id.* (internal quotation marks and citation omitted), or where "enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir.

2004).

Here, I find further proceedings would be useful. Given the minimal medical record, disability onset must be inferred. Dr. Dover opines the evidence is consistent with Mr. Glover's allegations that he has been disabled since 1999. However, though he has not yet reviewed all of the medical evidence, Dr. Rullman suggests some necessary findings in support of Mr. Glover's allegations are lacking. Thus, it would be helpful in determining disability to inquire further of Dr. Rullman concerning the 2005 x-rays and the impact they may or may not have on his analysis. Thus, on remand the ALJ is directed to re-contact Dr. Rullman for this purpose. If the ALJ is unable to contact Dr. Rullman, another suitable ME should be selected. Further, because Dr. Rullman's opinion was determinative of the ALJ's decision, the ALJ should also re-analyze the other evidence submitted in this case, including Dr. Dover's opinion and Mr. Glover's testimony, in light of any further evidence adduced. Finally, all of the limitations the ALJ finds are supported in the record, must be included in her RFC assessment.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED AND REMANDED FOR FURTHER PROCEEDINGS under sentence four of 42 U.S.C. 405(g).

Dated this __22nd__ day of May, 2007.

/s/ Michael W. Mosman_____
MICHAEL W. MOSMAN
U.S. District Judge